COMMONWEALTH *vs.* OSCAR M. BROOKS.

On the trial of an indictment, the Commonwealth relied on the testimony of an accomplice; and the judge instructed the jury that they might convict on the testimony of an accom-plice alone, but that it was unsafe to rely upon it without confirmation on some point material to the issue. and connecting the defendant with the offence charged; and sub-mitted the question of corroboration to them upon all the evidence in the case. *Held,* that the defendant had no ground of exception.

A conviction of an offence cannot be proved by an unofficial copy of the clerk's docket, sup-ported by the copyist's oath.

An indictment on the Rev. Sts. *c.* 126, § 39, which charges the defendant, in the words of the statute, with wilfully and maliciously administering a certain poison to the horse of another person, is sufficient, without further averment of any criminal intent, or of any injury to the horse.

INDICTMENT on Rev. Sts. *c.* 126, § 39, averring that Charles Pinkham at Taunton on the 16th of March 1857, "with force and arms, wilfully and maliciously did administer to a certain horse, of the value of one hundred and fifty dollars, of the prop-erty of one Henry F. Cobb, a large quantity, to wit, fifty grains, of a certain poison called strychnine;" and that Oscar M. Brooks at Taunton, before the said felony was committed in manner and form aforesaid, to wit, on the same day, "did felo-niously and maliciously incite, move, procure, aid, counsel, hire, and command the said Charles Pinkham the said felony in manner and form aforesaid to do and commit, against the peace of said commonwealth and contrary to the form of the statute in such case made and provided." Trial in the court of com

mon pleas in Bristol at September term 1857, before *Briggs*, J., who allowed a bill of exceptions setting forth the following case

The principal witness called by the government was Frank Marsh, who testified that he aided in the commission of the principal felony, and that he together with Charles Pinkham was employed by the defendant, to commit the felony charged to have been committed by Pinkham. The testimony of Marsh was that the defendant said to him and Pinkham in Leonard Street that he would give fifty dollars for poisoning Cobb's horse, and would get the stuff for the purpose; that on Monday the 16th of March, in Pinkham's presence, the defendant said he had been to Providence the Saturday before, and got the stuff; after saying this, the defendant went with him to point out Cobb's horse, and on his return said to the witness and Pinkham that he had had trouble with Cobb, and wanted to make him afraid of him, and would pay well; and he then gave the witness a package containing the stuff, and he and Pinkham put it into apples, and gave it to the horse at half past six that evening.

Lydia Barnes testified that at a certain time in the day when *it* was testified by Marsh that the felony was committed, but when she could not say, she saw a man of middle size, with an overcoat on having loose flowing sleeves, near the place where the felony was committed. And there was testimony in the case, offered by the defendant, tending to show that the defendant from an early hour in the morning until after seven o'clock in the evening was either on the way to or in the city of Providence, and one of his witnesses testified that while in Providence the defendant wore a raglan coat with loose sleeves.

The district attorney further relied on the following facts as controlling Marsh's testimony: Marsh testified that in the evening, and soon after the principal felony had been committed, he communicated the same to Lydia Barnes; and the district attorney contended that, although he could not inquire as to the disclosure, the defendant might do so, yet had not, and this was a fact which the jury might consider in corroboration. Marsh testified that when he met the defendant on the 16th of March

the defendant's brother was with him, and was present at part of their interview; yet the defendant did not call his brother to contradict this testimony, nor give any reason why he did not call him. Pinkham was in the jail in Taunton, and the defendant did not call him. The district attorney produced a phial from which Marsh testified the stuff was taken which was given to the horse; and there was evidence tending to prove that it was found in the place where Marsh said it was put after the stuff from it was given to the horse.

Marsh testified that he had been tried in Boston under the name of Hugh C. Tivnon, which was his true name; but declined to state for what offences he had been so tried, and also declined to answer the question if he had been in the State Prison. To prove that Marsh had been convicted of crime in Boston, and sentenced to the State Prison, the defendant offered to show by a police officer from Boston that Marsh was a resident of the State Prison in 1852, 1853 and 1854. The district attorney objected, and his objection was sustained by the court. The witness said he had examined the records of the court in Boston, and had made a copy of the clerk's docket, which was produced, and offered in evidence, but excluded by the court.

The judge instructed the jury, " that when an accomplice was offered as witness by the government, it was competent for the jury to convict on the testimony of an accomplice alone; the principle which allowed the evidence to go to the jury necessarily involved in it a power in them to believe it; but the source of this evidence was so corrupt that it was always looked upon with suspicion and jealousy, and it was deemed unsafe to rely upon it without confirmation; that the rule as to confirmation laid down by the supreme court was that the corroborating evidence must relate to some portion of the testimony which is material to the issue;" but that, " as the defendant in this case had contended that the rule was that the corroborating facts must be such as to connect the defendant with the offence charged, and had produced some authority to this point, he would so instruct the jury, and did so instruct them."

After the judge had finished his charge, the defendant's coun-

sel asked him to instruct the jury that " no fact had been shown which in law had any tendency to connect the defendant with procuring Pinkham to commit the felony charged to have been committed by Pinkham." But the judge declined so to instruct the jury, and said it was a question for them to determine upon all the evidence submitted.

The defendant, being convicted, alleged exceptions to all these rulings and instructions ; and also to the overruling of a motion in arrest of judgment, upon the ground that " the indictment does not set forth any criminal offence in accordance with the rules of law; because it is not averred that the poison was administered to said horse with intent to kill or injure, or with any criminal intent ; and because it is not averred that said horse was injured or killed by the administering of said poison."

*B. Sanford,* for the defendant. The question whether there is any evidence to corroborate the testimony of an accomplice is a question of law, upon which the jury should be instructed; although they may convict without such corroboration, if they see fit. In order to amount to corroboration, the corroborated evidence must relate to some portion of the testimony which is material to the issue. Here there was no such corroboration, and the refusal of the judge to instruct the jury accordingly is ground of exception. *Commonwealth* v. *Bosworth,* 22 Pick. 399. Rosc. Crim. Ev. (2d ed.) 145. *Commonwealth* v. *Packard,* 5 Gray, 101.

*C. I. Reed,* also for the defendant. The clerk's docket is competent evidence of the doings of the court ; and may be proved by the testimony on oath of the witness who made the copy. *Read* v. *Sutton,* 2 Cush. 115. 1 Greenl. Ev. § 508.

Judgment should have been arrested, for the reasons assigned in the motion. *Penhallo's case,* Cro. Eliz. 231. *The King* v. *Phillipps,* 6 East, 464. *Rex* v. *Woodfall,* 5 Bur. 2666. *The King* v. *Mason,* 2 T. R. 581. *Commonwealth* v. *Slack,* 19 Pick. 305. *Commonwealth* v. *Collins,* 2 Cush. 556. *Commonwealth* v. *Thurlow,* 24 Pick. 374. *Commonwealth* v. *Pray,* 13 Pick. 359. *Rex* v. *Horne,* Cowp. 683. *Carter* v. *Andrews,* 16 Pick. 1. *Commonwealth* v. *Child,* 13 Pick. 198. *Snell* v. *Snow,* 13 Met. 278.

*Bloss* v. *Tobey*, 2 Pick. 328.   *Commonwealth* v. *Tuck*, 20 Pick. 362.   3 Greenl. Ev. § 13.

*J. H. Clifford*, (Attorney General,) for the Commonwealth.

METCALF, J.   The instructions given to the jury conformed to the settled law.   *Commonwealth* v. *Bosworth*, 22 Pick. 397. So did the exclusion of the offered evidence of Marsh's conviction of a state prison offence.   A duly authenticated copy of the record of his conviction was the only admissible evidence that he had been convicted.   1 Greenl. Ev. § 513.   The exceptions taken at the trial must therefore be overruled.

The motion in arrest of judgment must also be overruled.   It is enacted by the Rev. Sts. *c.* 126, § 39, that " every person, who shall wilfully and maliciously kill, maim or disfigure any horses, cattle or other beasts of another person, or shall wilfully and maliciously administer poison to any such beasts, shall be punished," &c.   And the offence committed by Pinkham, which this indictment alleges that the defendant incited and procured Pinkham to commit, is set forth in the terms of the statute, viz. that he wilfully and maliciously did administer to a horse, of the property of Henry F. Cobb, a poison called strychnine. The objection made to the indictment is, that it does not allege that the poison was administered with an intent to kill or injure the horse, or that the horse was thereby killed or injured.   But the clause of the statute, on which the indictment is framed, does not make punishable the killing or injuring of another's beast by administering poison, nor the administering of poison with intent to kill or injure such beast.   And this is one of that class of statute offences which are sufficiently described in an indictment by being set forth in the words of the statute, without more, because those words, *ex vi term·inorum*, import all that is necessary to a legal description of the offence.   See *Commonwealth* v. *Ashley*, 2 Gray, 357.   The word " wilfully " in the present indictment, means intentionally, and the word " maliciously " imports a criminal motive, intent or purpose.   *Commonwealth* v. *Walden*, 3 Cush. 558.   If such motive, intent or purpose is not proved to the satisfaction of the jury, on the trial of a defendant, he must be acquitted.   Rosc. Crim. Ev. (2d ed.) 338.                 *Exceptions and motion in arrest overruled.*